**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| MICHAEL VORKAPICH, | ) |
|  | ) |
|  | ) Case No. 1:23-cv-00827 |
| Plaintiff | ) |
| v. | ) |
|  | ) Judge: |
| MICHIGAN STATE UNIVERSITY | ) |
|  | ) |
| and | ) |
|  | ) |
| ALAN HALLER, | ) |
|  | ) |
| and | ) |
|  | ) |
| ASHTON HENDERSON, | ) |
|  | ) |
| Defendants | ) |

Scot A. Hinshaw (P78586)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio  43604-5573
Telephone:     (419) 241-9000
Facsimile:     (419) 241-6894
E-mail:        shinshaw@shumaker.com

Attorney for Plaintiff

**COMPLAINT AND JURY DEMAND**

Now comes Plaintiff Michael Vorkapich ("Plaintiff"), by and through his attorneys, and, for his Complaint against Defendant Michigan State University ("MSU"), Alan Haller ("Haller"), and Ashton Henderson ("Henderson"), respectfully states as follows:

**Nature of Action**

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("the ADEA"), the Americans with Disabilities Act

of 1990 ("the ADA") and 42 U.S.C. § 1983 ("Section 1983") to correct the unlawful employment practices on the basis of race, gender, age, and disability and to provide relief to Plaintiff for the past and continuing adverse effects of such practices. As further alleged below, Plaintiff, a certified strength and conditioning coach with a Master's degree, has had 24 years of continuous promotion and increased responsibility in his employment with MSU. Since Haller started as Athletic Director and Henderson as Plaintiff's supervisor, Plaintiff has experienced and continues to experience discriminatory treatment by Defendants. Plaintiff, among other things, has been demoted twice, excluded from meetings, relegated to an isolated office and left out of decisions relevant to his job. Younger, less qualified, female, black, and nondisabled individuals have been promoted ahead of Plaintiff and treated better in the name of "diversity." While admirable in purpose, the effect has been direct and intentional discrimination against Plaintiff. After Plaintiff complained to Defendants about his mistreatment, he experienced retaliation in the terms and conditions of his employment.

**Parties**

1. Plaintiff is an individual residing within this District at 3645 W. Clark Road, Unit 10, DeWitt, Michigan 48820.

2. MSU is a public university located within this District at 1855 Place, 550 S. Harrison Road, East Lansing, Michigan 48823.

3. At all relevant times, MSU has been a State, a political subdivision of a State, or an agency or instrumentality of a State or a political subdivision of a State.

4. Haller is an individual residing within this District at 1265 Lobelia Lane, DeWitt, Michigan 48820.

5. Henderson is an individual residing within this District at 353 Division Street, East Lansing, Michigan 48823.

6. Defendants regularly conduct and transact business in Michigan.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1337, 1343. This action is authorized by 42 U.S.C. § 2000e-5(f)(1), 29 U.S.C. § 626(c), 42 U.S.C. § 12117(a) and 42 U.S.C. § 1983.

8. This Court has personal jurisdiction over the Defendants in this matter because each resides in the State of Michigan.

9. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Michigan. At all relevant times, Defendants worked in, resided in, or employed Plaintiff in this District. Thus, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2).

## Factual Background

10. Plaintiff has deep ties to MSU. His father and brother were varsity baseball players. He was a varsity football player for the Spartans and he has spent the vast majority of his adult life either as a student or as an employee of MSU.

11. In his 26 seasons at MSU, Plaintiff has been a part of a combined 21 B1G Conference championships, nine bowl games, seven men's basketball Final Fours, one women's basketball Final Four, three men's ice hockey Frozen Fours and two National Championships (2000 men's basketball and 2007 men's ice hockey).

12. Plaintiff has played an integral part in the development of numerous athletes who have gone on to professional careers in the NHL, NFL, NBA, WNBA and golf.

13. Plaintiff was promoted to Director of Athletic Performance/ Sports Science in 2020, and has been on MSU's athletic staff for 27 years and as a full-time employee for 25 years.

14. In 2009, Plaintiff was named Associate Head Strength and Conditioning Coach and added the title of Director of Sport Science to his resume in 2015. A former Spartan linebacker, Plaintiff has worked with numerous sports programs in his time at MSU. In addition to developing the first sport science program for MSU Athletics and overseeing the Athletic Performance staff, Plaintiff worked day-to-day with the Spartan hockey program prior to the discriminatory events set forth in this Complaint.

15. In his time at MSU, Plaintiff has had consistently positive reviews in MSU's formal annual review process and was not told there were any defects in his performance.

16. Plaintiff is White, 52 years old, male and has Tourette Syndrome.

17. In August 2021, Plaintiff's supervisor and close friend, Jim Pignataro, MSU's Executive Associate Athletic Director, died from cancer. Around that same time, Haller, who is Black and has less coaching and sports science experience than Plaintiff, was appointed as MSU's new Athletic Director.

18. Plaintiff did not learn from Haller who Plaintiff's new supervisor would be, and Haller began to exclude Plaintiff from decisions related to his job.

19. In November 2021, Plaintiff set up a meeting for Haller to meet with representatives from Nike involved in sports science research at MSU. During the meeting, Haller announced that there would be a sports science space in the new football building for all athletes. As the Director of Sports Science for all sports outside of football, this was the first time Plaintiff heard this. Plaintiff asked if there had been meetings about this decision, and Haller replied there had been. Despite his title, job duties and experience, Plaintiff had never been invited to any such meeting,

had no idea this was happening, and was embarrassed in front of the Nike representatives whom he worked with frequently.

20. Around late January or early February 2022, Plaintiff received a call from Henderson, who informed Plaintiff that he was Plaintiff's new supervisor.

21. Henderson, formerly the Executive Athletic Director for Championship Services and currently the Deputy Athletic Director, is Black, younger than Plaintiff and has less coaching and sports science experience than Plaintiff.

22. On May 19, 2022, Plaintiff met with Henderson. During the meeting, Plaintiff was suddenly informed that his title would be taken away from him, his position demoted, his salary reduced, his primary responsibilities removed and replaced with administrative tasks, and his office moved to a smaller and less visible location that was previously used for medical exams.

23. MSU took these actions against Plaintiff in order to promote less qualified, less experienced and younger staff which includes females and persons of color in the name of diversity.

24. While Plaintiff supports diversity efforts generally, Plaintiff does not believe it should be used to his more experienced and knowledgeable detriment.

25. Upon information and belief, Haller, who is Black, made the decision to treat Plaintiff in this manner, and Henderson supported and instituted it. Moreover, it was done without an evaluation of Plaintiff or any fair effort made by Haller and Henderson to first evaluate Plaintiff in his role.

26. Part of Plaintiff's former job responsibilities and job title went to a younger, less qualified female employee, Molli Munz.

27. Munz had a history of mistreating MSU graduate student employees and staff.

Plaintiff previously made MSU aware of Munz's actions and performance issues.

28. On February 10, 2022, Plaintiff met with Deputy Athletic Director, Jennifer Smith, a female, to discuss raises for Plaintiff's staff. During the meeting, Plaintiff expressed concern about giving Munz a raise based on her poor treatment of others and her poor job performance.

29. Smith dismissed Plaintiff's concerns and suggested that Munz should receive a raise because, as a woman, Munz was a minority in the strength and conditioning profession. Smith did not connect the raise to any merit related reason.

30. During that same meeting, Plaintiff requested that his title change to Assistant or Associate Athletic Director, and Smith told him that many more men had those titles than women, and they were not in line with Title IX. Smith made the statement irrespective of the quality of Plaintiff's work and his qualifications for the title.

31. On March 29, 2022, Plaintiff met with Henderson wherein Plaintiff informed Henderson of Munz's problematic behavior. Henderson asked if Munz could be mentored in hopes of her leading Plaintiff's department one day.

32. On April 21, 2022, Plaintiff met with Smith and Henderson. During the meeting, Plaintiff encouraged them to meet with other full-time Athletic Performance staff members, including graduate assistants, to investigate the extent of Munz's hostility towards and poor treatment of staff.

33. During that meeting, Henderson said he would follow-up on Plaintiff's request. Plaintiff asked if MSU planned to give Munz a raise in pay because "she checks all the boxes" and not based on her actual job performance. Smith responded to the effect of "that's what we did for you, isn't it?" Plaintiff responded with the question "because I'm a white guy with white privilege?" Smith did not respond, and Henderson shrugged with a smirk on his face.

6

34. Clearly, given Smith's and Henderson's reactions and failure to deny the intentional use of race and gender in evaluating and making decisions relative to Plaintiff's employment, Plaintiff had the distinct impression that decisions were being made by them and based on characteristics protected by law.

35. At or around the same time as Plaintiff's May 2022 demotion, he learned of several other promotions given that reflected Defendants' intentionally discriminatory conduct.

36. For example, Munz was promoted to Director of Sports Science for Olympic Sports, a role previously held by Plaintiff as Director of Athletic Performance/Sports Science. This placed Munz in a supervisory role over sports science interns, the same group of which she mistreated and Plaintiff had reported to Defendant Henderson just months earlier.

37. Other portions of Plaintiff's job responsibilities and oversight of Athletic Performance went to another younger employee, Lorenzo Guess, who is Black.

38. Guess does not hold a degree related to the study of Exercise Science and is not qualified for the position. Instead, Guess holds a Masters of Business Administration and his doctoral degree is in Sports Administration with a dissertation unrelated to human performance or athletic performance.

39. A third portion of Plaintiff's responsibilities, oversight of the Department's sports science program, went to a much younger employee, Billy Burghardt, who had less experience and qualifications than Plaintiff.

40. Plaintiff's responsibilities related to MSU's hockey team have gone to Will Morlock, a much younger employee with less overall experience and no college coaching experience at all.

41. Jon Smith, who is a younger Black employee, was promoted to Director of Jenison

7

Field House with only one year of full-time experience and three years overall in the profession. The Athletic Performance Policies and Procedures manual for the athletic department require "at least 5 years of professional experience or equivalent combination of professional experience and education preferred" for a Director role. This position (formerly called Director of Olympic Sports) previously reported directly to Plaintiff.

42. During the May 2022 meeting, Henderson did tell Plaintiff that he had heard some complaints about Plaintiff in April 2022. However, that was the first time Plaintiff had ever been informed of any issues with his employment. No specific complaint was shared with Plaintiff; nothing in writing was shared with Plaintiff; Plaintiff was not asked to respond to in any way or improve in any areas; and he received no formal evaluation.

43. Plaintiff knows of other employees similarly treated unfairly.

44. The University did not provide Plaintiff with any prior warning, performance improvement plan or any other disciplinary warning or action that might support its decision to suddenly demote Plaintiff, take away Plaintiff's responsibilities, and relegate Plaintiff to a remote office location.

45. Plaintiff's demotion was dictated to him. He had no choice or ability to negotiate. There was nothing voluntary about the change.

46. Additionally, the only issue raised with Plaintiff in the April 21, 2022 meeting was that Munz accused Plaintiff of yelling at her on several occasions. Plaintiff recalled that he had raised his voice on two occasions. Smith and Henderson were aware that Plaintiff suffered from Tourette Syndrome and knew that Plaintiff might have loud outbursts. However, neither MSU nor Henderson took Plaintiff's disability into account assuming it played a role in demoting Plaintiff and promoting Munz above him.

8

47. Now, when one looks at MSU's Athletic website, one sees Plaintiff's biography, detailing a consistent record of success, expertise, and promotion, contrasted with his demotion and even incorrectly lists his current title as "Assistant Coach, Professional Development & Special Projects."

48. More telling of the pattern of treatment Plaintiff has suffered is that his name became listed ninth on the directory of the Athletic Performance staff, a group he formerly led. His demoted position is administrative, removing him as a member of the athletic performance staff where he has national level acclaim and proven expertise. Yet, for a time, he remained listed under Athletic Performance staff, providing another slap in the face.

49. On or about July 8, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race, gender, age, and disability discrimination and retaliation.

50. Since then, Plaintiff has experienced continued mistreatment and retaliation by Defendants.

51. Plaintiff had always attended the Qualitative Medical Oversight Committee ("QMOC") meetings for the department, including attending in May and June of 2022. However, he was not invited to the QMOC meeting in October 2022.

52. Henderson asked Plaintiff why he had not attended, and Plaintiff responded that he had not received the meeting invitation. Plaintiff then received an invitation for the March 30, 2023 QMOC, but when he went to the meeting location at the designated time, no one was there. When he tried to join the meeting by Zoom instead, the link did not work.

53. Plaintiff texted Henderson and Dr. Jeff Kovan and was subsequently told that the meeting started later and Plaintiff was not needed. This was the first time Plaintiff had been told

9

he was not needed for Athletic Performance (a/k/a strength and conditioning) issues and only needed for facilities and individual management concerns.

54. This change in QMOC responsibility does not match Plaintiff's expertise nor does it "leverage his 20+ years of departmental experience."

55. Thus, by October 2022, less than two months into his new demoted role that was supposed to leverage his vast experience in strength, conditioning, and athletic performance, Plaintiff was consigned solely to facilities and management areas that did not match either the role he was supposed to be occupying or his experience. His new role was essentially a false one.

56. On Monday, April 3, 2023, Plaintiff texted Dr. Kovan asking if he was needed for the April QMOC meeting. Dr. Kovan responded "no."

57. On May 19, 2023, MSU provided Plaintiff with the impossible choice of being demoted again or being summarily terminated just two months prior to the date he would vest into his MSU retirement benefits.

58. Despite his years of experience and no disciplinary issues or performance improvement efforts raised by Defendants, Plaintiff received notice that "concerns with [his] work performance in [his] responsibilities were brought to the attention of management in late 2022," which resulted with his reassignment to a position in facilities.

59. Absent from the notice was the fact that Defendants failed to engage in any disciplinary process with Plaintiff, nor had he received any form of review during this period.

60. Again, Defendants took this action after he filed his Charge of Discrimination with the EEOC.

61. The May 19, 2023 letter went on to provide the following options to Plaintiff as of the next contract year (starting July 1, 2023): (1) a new contract as Director of Facilities – another

10

demotion with a salary of $58,000 per year, less than half Plaintiff's over $127,500 in annual compensation he was making before Defendants' demotions; (2) termination of his current contract without cause and payout through June 30; or (3) expiration of current contract on June 30, one month prior to his vested retirement date, without any renewal.

62. Lastly, the letter offered to bridge Plaintiff with a one-month contract extension to his retirement date, but would still result in termination of his employment at the age of 52.

63. This second demotion and the untenable options offered, after having filed his EEOC Charge of Discrimination, were designed to wrongfully deny him significant service and retirement benefits, for which he will soon be eligible, along with causing him additional public humiliation and loss of salary. Alternatively, he could make the difficult choice of giving up all income and a career he built over years in order to save his retirement benefits.

64. More recently, Plaintiff learned that four strength and conditioning positions came open in the MSU Athletic Department. Although Plaintiff is likely over-qualified for the positions and has been detrimentally affected by his treatment within the Athletic Department, no one at MSU offered or even discussed the roles with him. At least one of the positions was filled with a younger, female who had only two years' experience on the Division 1 level.

65. Additionally, as of the date of this filing, Plaintiff has been entirely removed and is not listed anywhere on the MSU staff directory.

66. Instead of considering him or offering him a position for which he is well qualified, Defendants demoted Plaintiff a second time at less than half his prior salary to further discriminate against, retaliate against and humiliate the Plaintiff.

67. Plaintiff has spent almost all of his professional life at MSU and served with the utmost distinction prior to Defendants' discriminatory and retaliatory actions.

68. Over the course of these events, Plaintiff's mental health and reputation have suffered. Plaintiff feels depressed, perceives a huge sense of loss and has sought mental health counseling. Plaintiff also has no idea how he is supposed to repair the reputational harm he has suffered as a result of Defendants' action.

69. At this point, Plaintiff is exhausted, demoralized, denigrated, mentally beaten and despondent about his treatment and the future of his career. It is clear Defendants have intentionally railroaded Plaintiff into not being able to perform the duties of his job and are attempting to force his constructive discharge.

70. Plaintiff exhausted all administrative remedies required of the applicable statutes and a Notice of Right to Sue was issued to him by the Equal Employment Opportunity Commission on May 9, 2023. A copy of the Notice of Right to Sue is attached to this Complaint as Exhibit A.

71. "The Equal Protection Clause…commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws." *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992) (quoting U.S. Const. amend. XIV, § 1).

## COUNT I
### Race Discrimination – 42 U.S.C. § 2000e, et seq.
### (Against MSU)

72. Plaintiff restates the preceding paragraphs as if fully set forth herein.

73. Plaintiff is a member of a protected class based on his race.

74. Plaintiff suffered and continues to suffer adverse employment actions at MSU as detailed in this Complaint.

75. Plaintiff performed the duties of his job and met MSU's expectations of him, having received no warning, disciplinary action or performance improvement plans prior to MSU's adverse actions against him.

76. Individuals outside of Plaintiff's protected class with less experience and qualifications of Plaintiff were inexplicably treated better than him, receiving promotions and assignment of Plaintiff's former titles and job responsibilities.

77. Additionally, MSU's representative admitted to treating Plaintiff differently because of race.

78. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back pay, front pay, lost benefits, consequential damages, and punitive damages for MSU's malice and reckless disregard for Plaintiff's rights.

## COUNT II
### Gender Discrimination - 42 U.S.C. § 2000e, et seq.
### (Against MSU)

79. Plaintiff restates the preceding paragraphs as if fully set forth herein.

80. Plaintiff is a member of a protected class based on his sex.

81. Plaintiff suffered and continues to suffer adverse employment actions at MSU as detailed in this Complaint.

82. Plaintiff performed the duties of his job and met MSU's expectations of him, having received no warning, disciplinary action or performance improvement plans prior to MSU's adverse actions against him.

83. Individuals outside of Plaintiff's protected class with less experience and qualifications of Plaintiff were inexplicably treated better than him, receiving promotions and assignment of Plaintiff's former titles and job responsibilities.

84. Additionally, MSU's representative admitted to treating Plaintiff differently because of sex.

85. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back pay, front pay, lost benefits, consequential damages, and punitive damages for MSU's malice and reckless disregard for Plaintiff's rights.

## COUNT III
### Age Discrimination - 29 U.S.C. § 623(a)
### (Against MSU)

86. Plaintiff restates the preceding paragraphs as if fully set forth herein.

87. Plaintiff is a member of a protected class based on his age.

88. Plaintiff suffered and continues to suffer adverse employment actions at MSU as detailed in this Complaint.

89. Plaintiff performed the duties of his job and met MSU's expectations of him, having received no warning, disciplinary action or performance improvement plans prior to MSU's adverse actions against him.

90. Individuals outside of Plaintiff's protected class with less experience and qualifications of Plaintiff were inexplicably treated better than him, receiving promotions and assignment of Plaintiff's former titles and job responsibilities.

91. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back pay, front pay, lost benefits, consequential damages, and liquidated damages for MSU's willful conduct within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## COUNT IV
### Disability Discrimination - 42 U.S.C. § 12112(a)
### (Against MSU)

92. Plaintiff restates the preceding paragraphs as if fully set forth herein.

93. Plaintiff is a member of a protected class based on his disability.

94. Plaintiff suffered and continues to suffer adverse employment actions at MSU as detailed in this Complaint.

95. Plaintiff performed the duties of his job and met MSU's expectations of him, having received no warning, disciplinary action or performance improvement plans prior to MSU's adverse actions against him.

96. Individuals outside of Plaintiff's protected class with less experience and qualifications of Plaintiff were inexplicably treated better than him, receiving promotions and assignment of Plaintiff's former titles and job responsibilities.

97. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back pay, front pay, lost benefits, consequential damages, and punitive damages for MSU's malice and reckless disregard for Plaintiff's rights.

## COUNT V
### Retaliation – Title VII, ADEA and ADA
### (Against MSU)

98. Plaintiff restates the preceding paragraphs as if fully set forth herein.

99. Plaintiff's action of filing the Charge of Discrimination with the EEOC constitutes protected conduct under Title VII, the ADEA and the ADA.

100. Because and as a direct result of Plaintiff filing the Charge of Discrimination with the EEOC, Plaintiff has suffered and continues to suffer adverse employment actions at MSU as detailed in this Complaint.

101. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back

pay, front pay, lost benefits, consequential damages, and punitive and/or liquidated damages for MSU's malice and reckless disregard for Plaintiff's rights and/or willful conduct.

## COUNT VI
### Deprivation of Federal Statutory Rights - 42 U.S.C. § 1983
### (Against Haller and Henderson)

102. Plaintiff restates the preceding paragraphs as if fully set forth herein.

103. MSU is a public institution of the State of Michigan.

104. Haller and Henderson are employed by MSU.

105. As a result, Haller and Henderson are state officials.

106. Haller and Henderson engaged in various discriminatory actions as detailed in this Complaint.

107. By virtue of their positions at MSU as supervisors over Plaintiff and related authority, Haller and Henderson acted under color of state law.

108. Haller's and Henderson's actions resulted in the deprivation of Plaintiff's federal statutory rights as detailed in Counts I through V.

109. As a result, Plaintiff has suffered both economic and noneconomic compensatory damages, including emotional and mental anguish. Plaintiff should be awarded reinstatement, back pay, front pay, lost benefits, consequential damages, and punitive damages for Haller's and Henderson's malice and reckless disregard for Plaintiff's rights.

## COUNT VII
### Breach of Employment Agreements
### (Against MSU)

110. Plaintiff restates the preceding paragraphs as if fully set forth herein.

111. On or about June 3, 2021, Plaintiff entered into an Employment Agreement with MSU to be its Director of Athletic Performance/Sports Science. A copy of the 2021 Employment

Agreement is attached as Exhibit B to this Complaint.

112. On or about June 20, 2022, Plaintiff entered into an Employment Agreement with MSU to be its Director of Assistant Coach Development and Special Projects. A copy of the 2022 Employment Agreement is attached as Exhibit C to this Complaint.

113. Through MSU's multiple actions of demoting Plaintiff, reducing his responsibilities and repetitively reducing his compensation, MSU has breached the Employment Agreements without justification.

114. MSU has no privilege for this breach.

115. MSU's breach has caused Plaintiff damages in the form of loss of pay and benefits, as well as consequential damages in the form of lost retirement benefits and forcing him to lose his nonrefundable deposit on a contract to build a new home for his family, among other out of pocket losses.

## **PRAYER FOR RELIEF**

A. That Defendants be ordered to cease engaging in all unlawful employment practices against Plaintiff;

B. That Plaintiff be reinstated to his position of Director of Athletic Performance/Sports Science or such higher position that Plaintiff would now hold had Defendants not discriminated against him;

C. That Plaintiff receive full back pay, including applicable raises, for the salary he was receiving or should have been receiving had Defendants not discriminated against him;

D. That, if reinstatement is not awarded, Plaintiff receive front pay through his chosen retirement date at or about age 67;

E. That Plaintiff be awarded all compensatory and statutory damages, including consequential damages, that resulted from Defendants' actions;

F. That Plaintiff be awarded punitive damages as a result of Defendants malice and reckless disregard for Plaintiff's rights;

G. That Plaintiff recover all his costs, expenses and attorneys' fees as provided by statute; and

H. That the Court order any further relief that may be just and reasonable.

Respectfully submitted,

*/s/ Scot A. Hinshaw*
Scot A. Hinshaw (P78586)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604-5573
Telephone: (419) 241-9000
Facsimile: (419) 241-6894
E-mail: shinshaw@shumaker.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all matters so triable.

*/s/ Scot A. Hinshaw*
Scot A. Hinshaw (P78586)
SHUMAKER, LOOP & KENDRICK, LLP

Attorney for Plaintiff